IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **JENSE BERG**, *et al.*,<br><br>   Plaintiffs,<br><br>   v.<br><br>**SAN JUAN MARRIOTT HOTEL & STELLARIS CASINO**, *et al.*,<br><br>   Defendants. | Civil No. 14-1746 (BJM) |

**OPINION AND ORDER**

Jense Berg ("Berg"), Maria Torres Mercado ("Torres"), and Jose Lopez Mercado ("Lopez") brought this action against San Juan Marriott Hotel & Stellaris Casino and AIG Insurance Company-PR alleging that they were unlawfully detained by hotel employees while staying at the hotel in 2012. Docket No. 1 ("Complaint") On November 20, 2015, defendants moved both for summary judgment and for dismissal due to lack of subject matter jurisdiction. Docket No. 26. Plaintiffs opposed. Docket No. 31. The case is before me on consent of the parties. Docket No. 14. For the following reasons, the motions for summary judgment and dismissal for lack of subject matter jurisdiction are **DENIED**.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if it "is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions [of the record materials] which it believes demonstrate the absence of a

genuine dispute of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The court does not act as trier of fact when reviewing the parties' submissions and so cannot "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon" conflicting evidence. *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). Rather, it must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. But the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and may not rest upon "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

## BACKGROUND

Except where otherwise noted, the following facts are drawn from the parties' Local Rule 56[1] submissions.[2]

Plaintiffs Berg, Torres, and Lopez were each staying at the Marriott Hotel in San Juan, Puerto Rico. SUMF ¶¶ 1–2. On the night of September 12, 2012, Berg visited the

---

[1] Local Rule 56 is designed to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." *CMI Capital Market Inv. v. Gonzalez-Toro*, 520 F.3d 58, 62 (1st Cir. 2008). It requires a party moving for summary judgment to accompany its motion with a brief statement of facts, set forth in numbered paragraphs and supported by citations to the record, that the movant contends are uncontested and material. Local Civil Rule 56(b), (e). The opposing party must admit, deny, or qualify those facts, with record support, paragraph by paragraph. *Id.* 56(c), (e). The opposing party may also present, in a separate section, additional facts, set forth in separate numbered paragraphs. *Id.* 56(c). Facts contained in the supporting or opposing statements of material facts are deemed admitted unless properly controverted. *Id.* 56(e),

[2] Defendants' statement of uncontested material facts ("SUMF") may be found at Docket No. 26-1. Plaintiffs' opposing statement of material facts ("OSMF") may be found at Docket No. 31-1.

Marriott's casino, where he cashed a number of one hundred dollar bills brought with him to Puerto Rico from St. Croix. SUMF ¶¶ 4–5. The bills had been stored in a safe for four to five years. Def. Berg Dep. at 16. On the morning of September 13, the casino conducted a "soft count" procedure in which bills paid during the previous evening were fed into a counting machine. SUMF ¶ 9. During the soft count, the machine rejected sixteen one hundred dollar bills as counterfeit. SUMF ¶¶ 10–11. An investigation conducted by the Security Department revealed that the bills had been played at Black Jack table 9 the previous evening by Berg. SUMF ¶ 15. On the morning of September 13, various cashier associates of the Casino and Hotel were instructed to be on the lookout for $100 bills. SUMF ¶ 16. Shortly after the alert went out, Lobby Bar attendant Jennifer Castro notified security that a customer had paid a $70.62 tab using a $100 bill, and left the area without picking up the change. SUMF ¶¶ 17, 21. Marriott security identified the customer as Berg and ran the bill through the counting machine, which rejected it. SUMF ¶¶ 18, 20. Security then notified the Secret Service and the Puerto Rico Police Department ("PRPD") that they suspected counterfeit money was being used in the hotel and casino. SUMF ¶¶ 23–24. Shortly thereafter, security personnel approached Berg in a vehicle in the hotel parking lot. SUMF ¶¶ 25–26.

At this point, the accounts provided by the plaintiffs and defendants diverge significantly. Plaintiffs claim that the security approached Berg's car at around noon or before, *see* OSMF ¶ 26, while defendants claim that security approached the car at 2:57 p.m. *See* SUMF ¶ 26. Plaintiffs contend that security officer Pedro Rivera Gonzague ("Rivera") told Berg that he needed to remain at the hotel because he used counterfeit money, *see* OSMF ¶ 27, while defendants claim that Rivera simply informed Berg there was a problem with the $100 bill he had used to pay at the bar and then asked him to come inside the lobby. *See* SUMF ¶ 27. In either event, both parties agree that Berg was escorted into the hotel without use of physical force. SUMF ¶¶ 28–29; OSMF ¶¶ 28–29. Upon arriving in the lobby, Berg met almost immediately with two PRPD officers, SUMF ¶ 32,

and at some point he was also interviewed in a separate room by the Secret Service. SUMF ¶ 35.

Meanwhile, Torres and Lopez claim that after Berg left with security, they were told to remain in the car by security personnel who stayed near the car. Pl. Torres Dep.[3] at 4:1–2; Pl. Lopez Dep. at 5:24–6:5. After a few minutes, Torres and Lopez say the security officers escorted them to the lobby, where they were told to remain in sight. Pl. Torres Dep. at 4:19–5:3; 8:5–9. At some point, Torres alleges that she went to the restroom and was followed by security officers who waited outside the stall. Pl. Torres Dep. at 8:11–9:19.

Plaintiffs were permitted to leave the lobby around or after 5 p.m., SUMF ¶ 36. That evening plaintiffs left the hotel for some time, though their accounts of where they went conflict slightly. *See* Def. Torres Dep. at 9:3–6 (plaintiffs "went for a ride"); Def. Berg Dep. at 5:6–23 (plaintiffs went "walking around"). Plaintiffs concede that they were never put under arrest at any time during the incident. OSMF ¶ 42. Berg was asked to come into the police station the following day. OSMF ¶ 38. The next morning, however, he was informed that the visit would not be necessary. Pl. Berg Dep. at 8:23–9:4.

Lopez, who had checked out of the Marriott before the incident began, did not return to stay at the hotel. Pl. Lopez Dep. at 4:14–5:20. Berg and Torres, on the other hand, actually extended their stay at the Marriott for two more nights. SUMF ¶ 43. None of the plaintiffs received medical treatment or took medications in relation to the incident at the Marriott. SUMF ¶ 45. This action was filed on October 13, 2014. Complaint.

## DISCUSSION

Defendants move for summary judgment on the plaintiffs' false imprisonment claims, or in the alternative, for dismissal due to lack of subject matter jurisdiction. I will

---

[3] Both defendants and plaintiffs submitted portions of Berg's, Torres's, and Lopez's depositions in support of their positions. I will refer to defendants' submissions as "Def. Berg Dep." (Docket No. 26-2), "Def. Torres Dep." (Docket No. 26-3), and "Def. Lopez Dep." (Docket 26-6). Likewise, I will refer to plaintiffs' submissions as "Pl. Berg Dep." (Docket No. 31-3), "Pl. Torres Dep." (Docket No. 31-4), and "Pl. Lopez Dep." (Docket No. 31-5).

Berg, *et al.* v. San Juan Marriott Hotel & Stellaris Casino, *et al.*, Civil No. 14-1746 (BJM)        5

discuss both motions in turn.

**I.    Summary Judgment**

Defendants argue that summary judgment should be granted on plaintiffs' false imprisonment claims because (1) plaintiffs cannot establish that their movements were restricted and (2) the hotel's actions were reasonable. Docket No. 26-9 ("Def. Memo.") at 15. As discussed below, however, the record contains genuine disputes of material fact that prevent me from granting summary judgment on any of the claims.

Plaintiffs bring their claims under Articles 1802 and 1803 of the Civil Code of Puerto Rico. Docket No. 10 at 5–6. Article 1802 of the Civil Code of Puerto Rico imposes liability on any person who causes damages to another through fault or negligence. P.R. Laws Ann. tit. 31 § 5141. Article 1803 extends liability to employers for damages caused by employees acting in service of the employer or on account of their duties. *Id.* § 5142. The Supreme Court of Puerto Rico recognizes a cause of action for false imprisonment "every time that a 'person, whether or not a law enforcement officer, may by himself or through another one unlawfully detain or cause the unlawful detention of another person.'" *Santana v. United States*, 919 F. Supp. 558, 563 (D.P.R. 1996) (quoting *Ayala v. San Juan Racing Corp.*, 12 P.R. Offic. Trans. 1012, 1021 (1982)). The doctrine of false imprisonment under Puerto Rican civil law is comparable to the doctrine under Anglo-American common law. *See Ayala*, 12 P.R. Offic. Trans. at 1021–22 (citing Prosser, *Law of Torts* § 11 (4th ed. 1971) and Restatement (Second) of Torts §§ 35, 44 (Am. Law Inst. 1965) as comparable sources of law in the Anglo-American tradition).

The elements of a false imprisonment claim are: "(1) intentional restriction of a person's freedom of movement, (2) that the detained person be conscious of the detention and that he or she not have consented, and (3) that the detention cause damages." *Segarra Jimenez v. Banco Popular, Inc.*, 421 F. Supp. 2d 452, 461 (D.P.R. 2006) (citing *Castro Cotto v. Tiendas Pitusa*, 159 D.P.R. 650, 656 (2003)). False imprisonment may be established even when the victim was not confined by physical force or barriers. *See*

*McCann v. Wal-Mart Stores*, 210 F.3d 51, 53 (1st Cir. 2000). Rather, confinement may result from threats of physical force, a false assertion of legal authority to confine, or a plaintiff's submission to other duress. *Id.* at 53; Restatement (Second) of Torts § 40. In determining if there was a false imprisonment, courts should take into account the reasonableness of the defendant's actions as well as the characteristics of the particular case, which may include "the person, age, appearance, and conduct of the detained person; knowledge that defendant had, on the day of the events, about the detained person . . . suspicious conduct, including the seriousness of the crime it could imply, the place, occasion, and frequency of said conduct." *Ayala*, 12 P.R. Offic. Trans. at 1024–25.

As with all motions for summary judgment, the court must view the record in the light most favorable to the nonmoving party and make all reasonable inferences in that party's favor. *Johnson v. Univ. of P.R.*, 714 F.3d 48, 52 (1st Cir. 2013). Applying that standard to the present case, the events of September 13, 2012 unfold as follows: plaintiffs were approached by two or more security guards while in their vehicle in the hotel parking lot. *See* SUMF ¶ 26. One of the security officers told Berg that he was being detained at the hotel because he had fake money. Pl. Berg Dep. at 5:19–22, 13:7–8.[4] Berg was then escorted to the hotel lobby by a security officer and was seated at a table. SUMF ¶¶ 30–31. More security officers entered the lobby, Pl. Berg. Dep. at 6:14–21, and within a short time Berg was met by local police officers. SUMF ¶ 32. Berg was later interviewed by Secret Service personnel in a separate room, SUMF ¶ 33, but he was never told that he was under arrest. SUMF ¶ 42.

Meanwhile, Torres and Lopez remained in the vehicle, while one or two security officers waited with them. Pl. Lopez Dep. 5:22–6:14. After about ten minutes, security

---

[4] Defendants dispute this fact and cite to Rivera's sworn statement saying that "[I] asked [Berg] if he could come to the Lobby because there was a problem with the one hundred dollar ($100) bill that he had just used to pay for his bill at the Lobby Bar . . . At no time was Mr. Berg informed that he had been arrested, detained, or forced to accompany me." Docket No. 26-5 ("Rivera Statement") ¶ 11.

officers asked Torres and Lopez to follow them to the lobby. *Id.* at 6:23–7:6.[5] Marriott security personnel detained Torres and Lopez in the lobby, telling them they "were in serious trouble" and forcing them to remain in sight. Pl. Torres Dep. at 7:19–8:9. At one point, a security officer accompanied Torres into the ladies restroom. *Id.* at 8:11–9:16. All plaintiffs, including Berg, were allowed to leave the lobby area a little after 5 p.m. SUMF ¶ 36.[6]

The plaintiffs' version of the events bears resemblance to *McCann* in which the First Circuit upheld a jury verdict in favor of plaintiffs' false imprisonment claim. 210 F.3d 51. In *McCann*, Wal-Mart employees stopped a mother and her two children as they were checking out, accusing one of the children of stealing on a previous occasion. *Id.* at 52–53. The employees asked the family to follow them to a different part of the store, informed them that the police were being called, and then waited with the family until security arrived. *Id.* at 53.  The court determined that the directions given to the family, the reference to the police, and continued supervision by the employees "were enough to induce reasonable people to believe that they would be restrained physically if they sought to leave, or that the store was claiming lawful authority to confine them until the police arrived, or both." *Id.* at 54.

Similar to *McCann*, Berg contends that he was approached by Marriott employees (in this case, security officers) who implicated him in a crime and told him he was being detained. And as in *McCann*, Berg then followed an employee to a different location and was supervised by employees at that location. Provided these facts, a jury could conclude that Berg reasonably believed that the security officers had legal authority to detain him in

---

[5] Defendants dispute this fact, citing Rivera's sworn statement that "Mr. Berg's companions arrived at the lobby by themselves unaccompanied, at 3:05 p.m." and attached still photographs from a surveillance camera. Rivera Statement ¶ 15.

[6] I have not addressed plaintiffs' further contention that they were confined to an area near the hotel on the night of September 13, 2012 and the following morning because the duration of confinement is material only as to the scope of damages; confinement for any amount of time will give rise to a cause of action for false imprisonment. *See Castro Cotto*, 159 D.P.R. at 656.

the parking lot, and that he would be physically restrained if he tried to leave the hotel lobby. *See Roth v. Golden Nugget Casino/Hotel, Inc.*, 576 F. Supp. 262, 265 (D.N.J. 1983) (plaintiff could have believed that hotel security officers had legal authority to detain her or would use physical force against her after the security personnel surrounded her and ordered her to accompany them to their office). Therefore, I cannot say that movants are entitled to judgment as a matter of law regarding Berg's claim.

Turning to Torres's and Lopez's claims, I find that like Berg, these two plaintiffs were constantly accompanied and watched by security personnel. At one point, security personnel even followed Torres into the ladies restroom and both plaintiffs were told to remain in sight in the hotel lobby. Given these facts, Torres and Lopez could have reasonably believed that security would physically restrain them if they attempted to leave the lobby. *See Pennoyer v. Marriott Hotel Servs., Inc.*, 324 F. Supp. 2d 614, 620 (E.D. Pa. 2004) (plaintiff could have believed he would be physically restrained when security personnel told him not to move and "just stay right there" while security called the police). Accordingly, summary judgment is also denied as to Torres's and Lopez's claims.

Defendants raise an additional argument: that summary judgment is appropriate because the employees' actions were reasonable given the facts of the case. However, defendants fail to develop this argument, limiting their analysis to one conclusory sentence.[7] The First Circuit has held "time and time again that 'Judges are not expected to be mindreaders' and that 'a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.'" *Fernandez-Salicrup v. Figueroa-Sancha*, 790 F.3d 312, 327 (1st Cir. 2015) (quoting *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988)) (internal quotations omitted). Without any citations to analogous cases or analysis of how the employees' actions were reasonable, defendants have failed to establish

---

[7] "Moreover, Marriott's actions are evidently reasonable, in light of the circumstances presented above." Def. Memo. at 16.

Berg, *et al.* v. San Juan Marriott Hotel & Stellaris Casino, *et al.*, Civil No. 14-1746 (BJM)   9

that summary judgment is appropriate.

Furthermore, of the two cases that defendants do provide for their argument, one seems to go against their point.[8] In *Ayala*, the Puerto Rico Supreme Court held that detaining a plaintiff for apparently placing illegal bets was not reasonable when security agents "could and should have waited to confirm if said conduct was in fact criminal." 12 P.R. Offic. Trans. at 1025. Similarly, in the instant case, security personnel could have verified that the bills were actually counterfeit before making any move to confront Berg. At the time he was detained, Berg was booked at the Marriott for three more nights, SUMF ¶ 3, and the record provides no indication that Berg planned to check out early or knew hotel security had started investigating him. In light of these facts and the limited case law made available to the court, I cannot conclude as a matter of law that the employees' decision to detain Berg was reasonable.

For the reasons provided above, I also cannot determine as a matter of law that the alleged detainments of Torres and Lopez were reasonable. The record provides no indication that hotel security suspected either Torres or Lopez of committing a crime, and their mere association with Berg does not, on its face, justify their confinement. Thus, defendants' motion for summary judgment is denied.

## II.   Motion to Dismiss

Defendants also seek to dismiss the action for lack of subject matter jurisdiction, arguing that the damages alleged by each plaintiff do not meet the amount in controversy requirement for diversity cases established by 28 U.S.C. § 1332. Diversity of citizenship is undisputed.

---

[8] The other case, *Parrilla Baez v. Airport Catering Svcs., Inc.*, 133 D.P.R. 263 (1993), is an untranslated Puerto Rico Supreme Court decision that cannot be considered by this court. *See* 48 U.S.C. § 854 ("[a]ll pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language."); *Puerto Ricans for Puerto Rico Party v. Dalmau*, 544 F.3d 58, 67 (1st Cir. 2008) ("Defendants, as the moving parties, had the obligation to provide the district court with a certified English translation of the Puerto Rico Supreme Court decision . . . on which they relied for [their motion to dismiss].")

Pursuant to 28 U.S.C. § 1332, federal district courts have original jurisdiction where there is diversity of citizenship and "the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a). To meet the amount in controversy, each plaintiff must allege a claim that is greater than $75,000. *See Stewart v. Tupperware Corp.*, 356 F.3d 335, 337 (1st Cir. 2004) (citing *Clark v. Paul Gray, Inc.*, 306 U.S. 583, 589 (1939)). Additionally, the claims of multiple plaintiffs to the same suit cannot be aggregated to meet this jurisdictional requirement. *See Spielman v. Genzyme Corp.*, 251 F.3d 1, 7 (1st Cir. 2001). However, in certain instances, a district court may have authority to exercise supplemental jurisdiction over a claim that does not meet the amount in controversy. 28 U.S.C. § 1367(a) allows that "[i]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The Supreme Court has interpreted this provision to mean that if the claim of one plaintiff in a diversity suit meets the requisite jurisdictional amount, and therefore falls under the original jurisdiction of the district courts, a court may exercise supplemental jurisdiction over the claims of other plaintiffs in the suit who do not meet the amount in controversy.[9] *See Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 558–59 (2005). Therefore, in the instant case, if the claim of one plaintiff meets the amount in controversy, this court may exercise supplemental jurisdiction over the claims of the other two plaintiffs.

To justify dismissal for failing to meet the amount in controversy requirement, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount . . . ." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). Generally, a plaintiff's allegation of damages will control the amount in controversy,

---

[9] This assumes, of course, that there are no other jurisdictional defects present such as a lack of complete diversity and that the plaintiffs' claims are sufficiently related to one another to "form part of the same case or controversy" as required by § 1367(a).

"unless questioned by the opposing party or the court." *Spielman*, 251 F.3d 1 at 5. A challenge to the amount requirement may be based on the pleadings or by evidence showing that the damages could never have exceeded the jurisdictional amount. *See Coventry Sewage Assocs. v. Dworkin Realty Co.*, 71 F.3d 1, 6 (1st Cir. 1995). Once the amount requirement is challenged by the defendant, the plaintiff "has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the case involves less than the jurisdictional amount." *Dep't of Recreation & Sports v. World Boxing Ass'n*, 942 F.2d 84, 88 (1st Cir. 1991). In other words, "all the plaintiff must do to carry this burden . . . is to set forth facts which, if true, would prevent the trier from concluding *to a legal certainty* that the potential recovery is capped at a figure below the jurisdictional minimum." *Barrett v. Lombardi*, 239 F.3d 23, 30–31 (1st Cir. 2001).

In the present motion for dismissal, defendants argue that none of the plaintiffs have established a claim exceeding $75,000. Def. Memo. at 21. In particular, defendants claim that plaintiffs have failed to "proffer evidence that [their] health, wellbeing and happiness really became affected," and that under Puerto Rico law, this precludes plaintiffs from collecting the damages they claim. Def. Memo. at 21-22. However, I am not satisfied to a legal certainty that a federal jury could not award one of the plaintiff the requisite jurisdictional amount.

For purposes of illustration, I turn to Torres's claim for damages. In the complaint, Torres claimed "general damages for emotional pain and suffering" valued at $300,000. Complaint at 6. Upon challenge by the defendants, plaintiff's attorney clarified that the amount claimed was based on the distress and embarrassment caused by the incident. Docket No. 31-2 ("Pl. Memo.") at 14–15. Furthermore, plaintiff's attorney attached Torres's deposition in which Torres alleges that security told her that she was in "serious trouble," told her not to move, and accompanied her into the bathroom. Pl. Torres Depo. at 2:18–3:1. She further stated that the incident caused her "a great deal of anguish . . . [and] a great deal of fear." *Id.* at 2:18–24. I find that the plaintiffs' memorandum along with the

Berg, *et al.* v. San Juan Marriott Hotel & Stellaris Casino, *et al.*, Civil No. 14-1746 (BJM)                                                                 12

attached deposition meet Torres's burden of "alleging with sufficient particularity facts indicating that it is not a legal certainty that the case involves less than the jurisdictional amount." *Dep't of Recreation & Sports*, 942 F.2d at 88.

The damages Torres seeks are not novel. The Puerto Rican Supreme Court has recognized that a plaintiff in a false imprisonment action may receive compensation for "mental suffering, humiliation, and analogous moral damages" and "for the value of the time lost, for the inconveniences and physical discomfort suffered, and for any adverse effect to his health." *Ayala*, 12 P.R. Offic. Trans at 1029 (citing to Prosser, *Law of Torts* § 11 (4th ed. 1971)).[10] While defendants rightly say that to sustain an action for so-called moral damages,[11] the claimant must "furnish evidence to support the fact that his health, welfare, and happiness were actually affected," *Rivera Colon v. Diaz Arocho*, 165 D.P.R. 408, 432 (2005) (official translation), it is also true that a determination of moral damages "should not depend solely on material facts and purely objective evidence." *Id.* at 431. Rather, "[i]t is an undertaking that tolerates a certain degree of speculation, since it relies, to a greater extent than special damages, on subjective factors such as the discretion, the sense of justice, and the humane conscience of the trier of facts." *Id.*

While defendants cite to a number of Puerto Rico Supreme Court cases to support their assertion that plaintiffs cannot establish the requisite damages, their brief is conspicuously lacking in federal court cases. The distinction between the jurisdictions is pivotal. In Puerto Rico court, the trier of facts who will be exercising such "discretion," "sense of justice," and "humane conscience" when determining damages is a judge.

---

[10] Note that Puerto Rico does not recognize punitive damages. *See Noble v. Corporacion Insular de* Seguros, 738 F.2d 51, 54 (1st Cir. 1984).

[11] Under Puerto Rico law, plaintiffs may recover two types of damages: pecuniary or economic damages, and moral damages. *See In re Caribbean Petroleum, LP*, 561 F. Supp. 2d 194, 200 (D.P.R. 2008). The Puerto Rico Supreme Court has defined moral damages as those "inflicted on the beliefs, feelings, dignity, social esteem, or physical or mental health of the injured party." *Rivera Colon v. Diaz Arocho*, 165 D.P.R. 408, 428 (2005) (official translation). In this case, plaintiffs only seek to recover moral damages.

However, in federal court, "[t]he task of estimating money damages, especially intangible, noneconomic loss, constitutes a core jury function." *Stewart*, 345 F.3d at 339 (internal quotations omitted). For this reason, the First Circuit has repeatedly held that damages awarded in Puerto Rico Supreme Court cases are not adequate indicators of the possible damages available in federal court. *See Rosario Ortega v. Star-Kist Foods, Inc.*, 370 F.3d 124, 129 (1st Cir. 2004), *rev'd on other grounds sub nom*, *Exxon Mobil Corp.*, 545 U.S. 546; *Stewart*, 345 F.3d at 339. While the "the nature and extent of the right to be enforced in a diversity case," is a matter of state law, the "determination of the value of the matter in controversy for purposes of federal jurisdiction is a federal question to be decided under federal standards." *Stewart*, 356 F.3d at 339 (quoting *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 352-53 (1961)). Though a judge in Puerto Rican court may find that no plaintiff in the present case can establish over $75,000 in damages, this does not preclude a federal jury from doing so.

With this in mind, we turn to federal false imprisonment cases to determine if Torres could conceivably meet the jurisdictional amount. It is readily apparent that she can. *See, e.g.*, *Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112, 1117-18 (11th Cir. 2006) (upholding jury award of $117,000 to falsely imprisoned customer who suffered embarrassment over the incident, developed a facial twitch, lost weight, had trouble sleeping, and altered his shopping habits); *Forgie-Buccioni v. Hannaford Bros., Inc.*, 413 F.3d 175, 183 (1st Cir. 2005) (upholding general verdict of $100,000 to plaintiff alleging false imprisonment, false arrest, malicious prosecution, and defamation after plaintiff nearly suffered from hypoglycemic shock due to the detention, was humiliated by being escorted out of the store in handcuffs, had his reputation damaged, and incurred legal costs due to criminal charges). While these cases are not on all fours with the present case, they help "demonstrate that it is not legally certain that a jury could not make an award of $75,000." *Stewart,* 356 F.3d at 340. The fact that "no prior plaintiff has recovered the jurisdictional amount for a certain injury does not indicate to a legal certainty, that the

Berg, *et al.* v. San Juan Marriott Hotel & Stellaris Casino, *et al.*, Civil No. 14-1746 (BJM)                                14

plaintiff could not recover the amount." *Id.* at 339.

For these reasons, I cannot say to a legal certainty that Torres could not recover the required jurisdictional amount. Furthermore, since Torres's claim meets the threshold amount required to establish this court's original jurisdiction, this court also has discretion to exercise supplemental jurisdiction over the nearly identical claims of the other two plaintiffs. S*ee Exxon Mobil Corp.*, 545 U.S. at 558-59. I choose to extend such jurisdiction. The motion to dismiss is denied for all three claims.

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment and motion to dismiss for lack of subject matter jurisdiction are **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 6th day of July, 2016.

                                                                     *S/ Bruce J. McGiverin*
                                                                     BRUCE J. MCGIVERIN
                                                                       United States Magistrate Judge